DOUGLAS H. McMILLIAN AND MARGARET S. McMILLIAN, PLAINTIFFS v. NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, AND ALLSTATE INSURANCE COMPANY, DEFENDANTS

No. COA96-383

(Filed 4 February 1997)

1. **Insurance § 509 (NCI4th)— employee injured in automobile accident—UM coverages—no reduction for workers' compensation—subrogation for compensation carrier**

    The amount of uninsured motorist (UM) coverage for a passenger injured in an automobile accident in the course and scope of his employment should not be reduced by the amount of workers' compensation benefits paid to the passenger where the UM coverage was provided by personal automobile policies paid for by the passenger and driver rather than by business automobile policies, even though the policies contained a workers' compensation exclusion. However, the workers' compensation carrier was entitled, pursuant to N.C.G.S. § 97-10.2, to be subrogated to

any payment, including UM insurance proceeds, made to plaintiff by or on behalf of a third party as a result of plaintiff's injury.

**Am Jur 2d, Automobile Insurance §§ 293 et seq.**

**Insured's right to bring direct action against insurer for uninsured motorist benefits. 73 ALR3d 632.**

**Who is "member" or "resident" of same "family" or "household," within nofault or uninsured motorist provisions of motor vehicle insurance policy. 96 ALR3d 804.**

**Applicability of uninsured motorist statutes to self-insurers. 27 ALR4th 1266.**

2. **Insurance § 509 (NCI4th)— UM coverage—loss of consortium**

If an injured passenger's wife is awarded damages for loss of consortium, the UM carriers for personal automobile policies issued to the passenger and driver would be liable to her to the extent that the coverages are not exhausted.

**Am Jur 2d, Automobile Insurance §§ 293 et seq.**

**Insured's right to bring direct action against insurer for uninsured motorist benefits. 73 ALR3d 632.**

**Who is "member" or "resident" of same "family" or "household," within nofault or uninsured motorist provisions of motor vehicle insurance policy. 96 ALR3d 804.**

**Applicability of uninsured motorist statutes to self-insurers. 27 ALR4th 1266.**

Appeal by plaintiffs from judgment entered 25 January 1996 by Judge Howard R. Greeson, Jr., in Rockingham County Superior Court. Heard in the Court of Appeals 6 January 1997.

*Robert S. Hodgman and Associates, by Robert S. Hodgman, for plaintiff appellants.*

*Henson & Henson, L.L.P., by Perry C. Henson, Jr., and Rachel Scott Decker, for defendant appellee North Carolina Farm Bureau Mutual Insurance Company.*

*Smith Helms Mulliss & Moore, L.L.P., by Stephen P. Millikin, for defendant appellee Allstate Insurance Company.*

McMILLIAN v. N.C. FARM BUREAU MUTUAL INS. CO.

[125 N.C. App. 247 (1997)]

SMITH, Judge.

This is a declaratory judgment action wherein the insurance companies involved seek to determine their obligations arising out of an automobile accident. On 2 April 1990 plaintiff Douglas H. McMillian was injured in an automobile accident in the course and scope of his employment. Plaintiff was a passenger in a car driven by James Laymond Boswell, a fellow employee. Mr. Boswell's vehicle collided with an automobile driven by Emanuel Canty, Jr., on North Carolina Highway 87 near Reidsville in Rockingham County, North Carolina. At the time of the collision, plaintiff was an employee of Winn-Dixie Stores, Inc., (Winn-Dixie). Winn-Dixie is a self-insured employer. Plaintiff Douglas H. McMillian filed a workers' compensation claim with the Industrial Commission, which action is still pending. As of 30 October 1995, plaintiff was still receiving weekly compensation of a temporary nature. As of 9 June 1993, plaintiff had been paid benefits in excess of $78,000.00.

Defendant Allstate Insurance Company (Allstate) provided uninsured motorist coverage (UM) in the names of Douglas H. and Margaret S. McMillian. Two vehicles, both registered in the name of Douglas McMillian were insured by the policy. The effective date of the policy was 22 October 1989. The policy provided coverage from 15 November 1989 to 15 May 1990 in the amount of $25,000.00 UM coverage for bodily injury and property damage. The Allstate policy contains the following exclusion:

> Any amount otherwise payable for damages under this coverage shall be reduced by all sums:
>
> \* \* \* \*
>
> 2. Paid or payable because of the bodily injury under any of the following or similar law:
>
>     a. workers' compensation law . . . .

Defendant North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau) insured the automobile owned and operated by James L. Boswell. The coverage period of the policy was from 1 March 1990 to September 1990. The vehicles covered by the policy were a 1979 Ford pickup truck, a 1983 Ford Escort and the 1983 Oldsmobile which was involved in the accident. The policy provided UM/underinsured motorists (UIM) insurance coverage for bodily injuries in the amount of $50,000.00 per person. The Farm Bureau policy contains the following exclusion:

McMILLIAN v. N.C. FARM BUREAU MUTUAL INS. CO.

[125 N.C. App. 247 (1997)]

Any amount otherwise payable for damages under this coverage shall be reduced by all sums:

\* \* \* \*

2. Paid or payable because of the bodily injury under any of the following or similar law:

a. workers' compensation law . . . .

Plaintiffs brought an action against defendants Emanuel Canty, Jr., and James Laymond Boswell alleging personal injuries arising out of the automobile accident. Plaintiffs sought damages for the personal injury of Douglas H. McMillian and for loss of consortium on behalf of Margaret S. McMillian. Plaintiffs' complaint in the underlying action against Boswell has been dismissed, presumably because in the case of ordinary negligence on the part of a fellow employee, plaintiff is barred from bringing an action against the fellow employee because recovery is limited by the Workers' Compensation Act. *Abernathy v. Consolidated Freightways, Corp.*, 321 N.C. 236, 240, 362 S.E.2d 559, 561 (1987); *Bass v. Ingold*, 232 N.C. 295, 299, 60 S.E.2d 114, 117 (1950); *Burgess v. Gibbs*, 262 N.C. 462, 467, 137 S.E.2d 806, 809 (1964). Plaintiffs' claim against defendant Canty is still pending.

Plaintiffs instituted this declaratory judgment action, to determine the coverage available under the automobile policies issued to plaintiffs and to defendant Boswell. The declaratory judgment action was heard 30 October 1995. The trial court ruled that plaintiffs were entitled to interpolicy stacking of UM coverage under the Allstate and Farm Bureau policies. However, both policies prohibit intrapolicy stacking of UM coverage, notwithstanding that multiple vehicles were listed in both policies. Plaintiffs have not assigned error to this issue and we do not address the same. The trial court also determined that the $50,000.00 Farm Bureau UM coverage and the $25,000.00 Allstate UM coverage were applicable to plaintiffs' claims against defendant Canty, but that the combined coverages of $75,000.00 were to be reduced by the $78,000.00 in workers' compensation benefits already paid to plaintiff Douglas H. McMillian. From this order plaintiffs appeal.

[1] Plaintiffs first argue that the trial court erred in reducing the amount of UM coverage by the amount of workers' compensation benefits paid to plaintiff because the applicable policies were personal rather than business policies. We agree and reverse the ruling of the trial court.

McMILLIAN v. N.C. FARM BUREAU MUTUAL INS. CO.

[125 N.C. App. 247 (1997)]

The general purpose of the Workers' Compensation Act, in respect to compensation for disability, is to substitute, for common-law or statutory rights of action and grounds of liability, a system of money payments by way of financial relief for loss of capacity to earn wages. There is no compensation provided for physical pain or discomfort. *Branham v. Denny Roll & Panel Co.*, 223 N.C. 233, 236, 25 S.E.2d 865, 867 (1943). "[O]ne of the purposes of the [Workers'] Compensation Act is to relieve against hardship rather than to afford full compensation for injury. The fixing of maximum and minimum awards in industry is a compromise." *Kellams v. Carolina Metal Products, Inc.*, 248 N.C. 199, 203, 102 S.E.2d 841, 844 (1958).

The fundamental purpose of the Motor Vehicle Safety and Financial Responsibility Act of 1953, N.C. Gen. Stat. § 20-279.1 to -.39, " 'is to compensate the innocent victims of financially irresponsible motorists.' " *Ohio Casualty Group v. Owens*, 99 N.C. App. 131, 133, 392 S.E.2d 647, 648 (*quoting Nationwide Insurance Co. v. Aetna Casualty Co.*, 283 N.C. 87, 90, 194 S.E.2d 834, 836 (1973)), *disc. review denied*, 327 N.C. 484, 396 S.E.2d 614 (1990); *see also Ohio Casualty Ins. Co. v. Anderson*, 59 N.C. App. 621, 625-26, 298 S.E.2d 56, 59 (1982), *cert. denied*, 307 N.C. 698, 301 S.E.2d 101 (1983) (purpose and scope of act). "Although uninsured/underinsured motorist coverage can be specifically rejected by an insured, it is not voluntary insurance governed exclusively by the terms of the particular insurance contract." *Id.* at 133, 392 S.E.2d at 649 (*citing Lichtenberger v. American Motorists Ins. Co.*, 7 N.C. App. 269, 272-73, 172 S.E.2d 284, 286-87 (1970); *Nationwide Ins. Co. v. Chantos*, 293 N.C. 431, 440-41, 238 S.E.2d 597, 603-04 (1977)). "The provisions of the Motor Vehicle Safety and Financial Responsibility Act are, in effect, written " 'into every automobile liability policy as a matter of law, and, when the terms of the policy conflict with the statute, the provisions of the statute will prevail.' " *Id.* (*quoting Chantos*, 293 N.C. at 441, 238 S.E.2d at 604 (1977)). N.C. Gen. Stat. § 20-279.21(b)(4) (1993) provides that

> [u]nderinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted. Exhaustion of that liability coverage for the purpose of any single liability claim presented for underinsured motorist coverage is deemed to occur

when either (a) the limits of liability per claim have been paid upon the claim, or (b) by reason of multiple claims, the aggregate per occurrence limit of liability has been paid. Underinsured motorist coverage is deemed to apply to the first dollar of an underinsured motorist coverage claim beyond amounts paid to the claimant under the exhausted liability policy.

In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident.

*Id.*

Section 20-279.21(b)(4) allows an insurer to reduce its uninsured/underinsured coverage only by the amount of liability insurance in force at the time of the accident. Moreover, our courts have repeatedly held that where policy terms purporting to exclude certain risks from uninsured/underinsured coverage are in conflict with the provisions of the Motor Vehicle Safety and Financial Responsibility Act such exclusions are unenforceable.

*Ohio Casualty*, 99 N.C. App. at 133-34, 392 S.E.2d at 649 (citations omitted). N.C. Gen. Stat. § 20-279.21(e) (1993) provides that motor vehicle liability policies, "need not insure against loss from any liability for which benefits are in whole or in part either payable or required to be provided under any workers' compensation law." Our Supreme Court has found two public policies inherent in this provision. "First, the section relieves the employer of the burden of paying double premiums (one to its workers' compensation carrier and one to its automobile liability policy carrier), and second, the section denies the windfall of a double recovery to the employee." *Manning v. Fletcher*, 324 N.C. 513, 517, 379 S.E.2d 854, 856, *reh'g denied*, 325 N.C. 277, 384 S.E.2d 517 (1989).

In *Manning* our Supreme Court held that an insurance carrier could reduce the UIM liability in a business automobile insurance policy by the amount received by the insured in workers' compensation benefits. *Id.* at 518, 379 S.E.2d at 857. However, in subsequent cases this Court, distinguishing *Manning*, has found a reduction for workers' compensation benefits *improper* in cases dealing with per-

sonal liability policies, even where the policy contains a workers' compensation exclusion. *Sproles v. Green*, 100 N.C. App. 96, 105-07, 394 S.E.2d 691, 697-99 (1990), *rev'd in part on other grounds*, 329 N.C. 603, 407 S.E.2d 497 (1991); *Ohio Casualty*, 99 N.C. App. at 136-37, 392 S.E.2d at 650-51; *Bailey v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 47, 54-55, 434 S.E.2d 625, 630 (1993); *Hieb v. St. Paul Fire & Marine Ins. Co.*, 112 N.C. App. 502, 506, 435 S.E.2d 826, 828 (1993).

In *Ohio Casualty*, relying on the public policies set forth in *Manning*, this Court declined to permit a reduction for workers' compensation benefits. *Ohio Casualty*, 99 N.C. App. at 136-37, 392 S.E.2d at 651. Because the insured herself paid for the liability insurance policy and the workers' compensation carrier had a lien on the insurance proceeds, the Court determined there would be no double recovery. *Id.*

This Court also refused to reduce the insurance proceeds by the amount of workers' compensation benefits in *Sproles*. In that case, we held that *Manning* did not apply because the policy at issue was not a business policy, but was a personal automobile policy and there was no double recovery because the damages exceeded the insurance available. *Sproles*, 100 N.C. App. at 106-07, 394 S.E.2d at 697.

This Court in *Bailey*, held that Nationwide's liability as the UM carrier could not be reduced by the amount of workers' compensation benefits paid to plaintiff by Aetna. *Bailey*, 112 N.C. App. at 54-55, 434 S.E.2d at 630. In reaching this holding we stated the following:

> In *Sproles* . . . our Court considered a case in which the plaintiffs were hurt in an automobile accident arising out of their employment and caused by a third party tortfeasor who had minimum bodily injury limits of insurance. The insurance company (USF&G) which held the UIM policy on the plaintiff driver's car attempted to have its liability reduced by monies paid to the plaintiff by her workers' compensation carrier. Our Court disallowed this, and said:
>
>> In this case USF&G's policy is not a business policy, it is a "Personal Auto Policy"; the policy was not paid for by [plaintiff's] employer, she and her husband paid for it; the workers' compensation insurance was not provided by USF&G or an affiliate; and [plaintiff's] damages have been established at an amount far in excess of any kind of insurance that is available to her. . . . In this case

> USF&G was paid to insure [plaintiff] against being dam-
> aged by a financially irresponsible motorist and while
> her damages by such a motorist remain unpaid USF&G's
> obligation to her should not be reduced or eliminated
> because part of her loss has been paid by someone else.

*Id.* (citations omitted).

In the present case the policies at issue are personal liability/UM policies paid for by the McMillians and by Boswell. On 1 March 1995 when plaintiffs filed their complaint, Douglas McMillian had received workers' compensation benefits in an amount that exceeded $78,000.00. This amount continues in the nature of weekly payments of compensation and medical bills. Allstate's and Farm Bureau's obligations to plaintiffs should not be reduced or eliminated because part of their loss has been paid by Winn-Dixie. Defendants improperly argue that *Brantley v. Starling*, 336 N.C. 567, 444 S.E.2d 170 (1994), requires that the UM coverage be reduced. However, in this case, the UM coverage and the workers' compensation coverage were provided by separate and unaffiliated carriers. Further, the UM policies at issue here are personal automobile policies and were not purchased by the employer. In *Brantley* the UIM and workers' compensation policies were both issued by North Carolina Farm Bureau and the plaintiff attempted to recover from the employer's business automobile insurance policy. *Id.* at 568, 444 S.E.2d at 170. The instant case is distinguishable and we hold that plaintiffs are entitled to recover the UM policy limits from Allstate and Farm Bureau. Additionally, pursuant to N.C. Gen. Stat. § 97-10.2 (1991), the workers' compensation insurance carrier (here Winn-Dixie) is entitled to be subrogated, upon reimbursement of the employee, to any payment, including UM/UIM motorist insurance proceeds, made to the employee by or on behalf of a third party as a result of the employee's injury. Thus, plaintiffs' recovery will not be a windfall or double recovery if Winn-Dixie opts to enforce its lien.

Plaintiffs' second assignment of error is that the trial court erred in holding that the UM coverage did not have to compensate plaintiff for damages uncompensated by workers' compensation. We disagree. In light of the above discussion, the UM carriers are liable for damages in excess of the workers' compensation amount possibly up to the amount of their coverage.

[2] Plaintiffs' third assignment of error is that the trial court erred in holding that the UM coverage did not have to compensate Mrs.

McMillian for her loss of consortium. We disagree. Because no final judgment has been entered in this case, we cannot say whether the UM carriers must compensate Mrs. McMillian for her loss of consortium. If Mrs. McMillian is awarded damages, the UM carriers would be liable to her to the extent that the coverages are not exhausted. *South Carolina Insurance Co. v. White*, 82 N.C. App. 122, 124, 345 S.E.2d 414, 415 (1986).

Reversed.

Chief Judge ARNOLD and Judge WYNN concur.